### 47910. PINKERTON & LAWS COMPANY v. ATLANTIS REALTY COMPANY, INC.

CLARK, Judge. "Finder's fee" contracts, euphemistically termed "business opportunity agreements" are a fact of life in today's business world. The extent to which they are used is shown by the annotation on the subject in 24 ALR3d 1160 which contains cases from 26 jurisdictions. The annotation defines such contracts "as an arrangement by which an intermediary finds, introduces, and brings together parties to a business opportunity, leaving the ultimate negotiation and consummation of the business transaction to the principals."

One of the earliest citations therein discussed is our 1923 case of *Garrett v. Wall,* 29 Ga. App. 642 (116 SE 331)

where this court upheld the validity of an oral agreement in which the owner of timber had promised compensation to an intermediary who had performed his agreed services in finding and introducing a prospective purchaser of sawmill timber. The principles which guided this court in its opinion of 50 years ago were those applicable to contracts generally. As is stated at page 1165 in the ALR article: "The validity of a business opportunities contract is fundamentally determined by rules applicable to contracts generally, including choice of law rules, the requirement of consideration, the necessity of definite terms, and the sufficiency of evidence from which such a contract may be implied in fact or in law."

In the case sub judice there was a letter agreement from a construction company, Pinkerton & Laws Co., defendant-appellant, to the Atlantis Realty Co., plaintiff-appellee. Testimony from defendant's witness indicates their assumption to have been that the realty company's sales representatives had some useful connections with a national restaurant chain preparing to extend their operations into the southeast. The letter began with the key words "In consideration for services rendered by you and expected from you," and then detailed briefly the amounts that would be paid and when such payments were due. The portions thereof pertinent to our study read: "(a) For the first contract we complete with Denny's Restaurant, we will pay an amount equal to 2% of the contract price . . .; (b) As we feel any subsequent work will be almost solely dependent upon our performance as General Contractors and in order for us to remain competitive we feel a payment of 1% of the contract price on all work after the initial contract is feasible . . . ." The construction concern was successful in obtaining and completing almost a million dollars of contracts from Denny's Restaurants

on which the realty company sought commissions. In addition to contending that the realty company's representative was not the procuring cause of their success in obtaining the Denny's Restaurants' construction jobs, the defendant argued its understanding to be that the letter agreement was limited to obtaining opportunities for "negotiated" construction contracts as opposed to "bidding." The letter agreement contained nothing concerning this phase. Six contracts were involved, the first three being on Fort Lauderdale jobs which resulted from Denny's Restaurant having invited defendant to bid, the other three being negotiated contracts, one in Miami and two in Atlanta.

The case was tried without a jury before Judge Joel J. Fryer. In the rendition of his judgment for the realty company plaintiff he stated his "Findings of Fact" and "Conclusions of Law." This appeal is from that judgment. The sole enumeration of error says "The trial court erred in basing its judgment against appellant upon findings of fact not supported by facts` in the record, thereby rendering its judgment contrary to law." *Held:*

1. This appeal demonstrates the usefulness of the procedure established by Code Ann. § 81A-152 (a) (Ga. L. 1970, pp. 170, 171) requiring the trial judge handling a case without a jury to make a special finding of facts and separately to state his conclusions of law. Prof. Moore writes: "The purpose of findings of fact is threefold: as an aid in the trial judge's process of adjudication; for purposes of res judicata and estoppel by judgment; and as an aid to the appellate court on review." 5A Moore's Federal Practice 2706, § 52.06. To this should be added the benefit to bench and bar in abbreviating appellate briefs by pin-pointing the factual questions.

This statute further provides that "Findings of fact shall

not be set aside unless clearly erroneous . . ." This evidentiary standard was stated in *Spivey v. Mayson,* 124 Ga. App. 775, 777 (186 SE2d 154) to be "[L]ike the findings of a jury, or of the Workmen's Compensation Board, they are binding on appeal and unless wholly unsupported or clearly erroneous will not afford a basis for reversal." In short, this is the so-called "any evidence rule" which has long been binding upon our Georgia appellate courts on appeals taken from a non-jury single-judge judgment. See annotation to Code § 70-202; 3 West's Ga. Digest 271-277, Appeal and Error, §§ 1010, 1011.

Appellant's attorney argues that the trial judge erred in his "finding that Appellee was the first to stimulate Appellant's interest in Denny's Restaurant construction contracts." (R. 63). In one succinct paragraph he points out portions of the transcript which he contends refute such finding. If the court's judgment is based upon a stated fact for which there is no evidence, it should be reversed. *Wiley, Parrish & Co. v. Kelsey,* 13 Ga. 223; *Moseley v. Fargason,* 215 Ga. 207 (109 SE2d 591).

Appellee's brief answers by referring to those portions of the transcript which support the trial judge's finding on this specific point. We do not deem it necessary to dwell on this rebuttal because we find there is ample testimony to satisfy the "any" evidence rule. Furthermore, the fact that the construction concern already had known of Denny's Restaurants' intentions through a Wall Street Journal article published many months previously which had at that time resulted in their writing directly to Denny's, the file copy of which letter was lost, is not the prime factor in plaintiff being entitled to judgment. Clearly, the construction concern composed the letter agreement to the realty company. Clearly, too, the desired services from plaintiff were rendered both before and after the date of that letter

which created the liability upon which judgment was declared.

2. The trial judge ruled correctly that the realty company's representative was the procuring cause. See *Bancroft v. Conyers Realty Co.*, 63 Ga. App. 106 (4) (10 SE2d 286) and *Wilcox v. Wilcox*, 31 Ga. App. 486 (3) (119 SE 445).

3. Although the construction concern's officials apparently had in their minds that their liability was to be contingent upon their obtaining contracts by negotiation rather than through bids, they made no mention of this fact in the letter they composed. "If there is any doubt about the meaning of a contract when considered as a whole, it will be construed against the party who prepared it." *Howkins v. Atlanta Baggage &c. Co.*, 107 Ga. App. 38 (1) (129 SE2d 158). See Code Ann. § 20-704 (5). Additionally, as is stated in the trial judge's finding of fact, the "understanding" which the construction concern expressed at the trial was not made known to the realty company. "The question as to what was intended, however, was an issue of fact for the jury [judge sub judice] under the evidence. . ." *Tarbutton v. Duggan*, 45 Ga. App. 31 (7) (163 SE 298).

*Judgment affirmed. Hall, P. J., concurs. Evans, J., concurs in the judgment only.*

ARGUED FEBRUARY 8, 1973 — DECIDED APRIL 2, 1973.

*Swift, Currie, McGhee & Hiers, Clayton H. Farnham,* for appellant.

*Gershon, Ruden, Pindar & Olim, George A. Pindar,* for appellee.